**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GERARDO SANCHEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16-cv-8665 |
| | ) |
| OFFICER B. DETTMAN, #8345, OFFICER E. ELY, #7991, and WARDEN DONALD ENLOE, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

NOW COMES the Plaintiff, GERARDO SANCHEZ, by and through counsel, SAMUELS & ASSOCIATES, LTD., and complaining of the defendants, OFFICER B. DETTMAN, #8345, OFFICER E. ELY, #7991, and WARDEN DONALD ENLOE, states as follows:

**INTRODUCTION**

1. This is a civil action seeking damages against defendants for committing acts under color of law, and depriving plaintiffs of rights secured by the Constitution and laws of the United States.

**JURISDICTION**

2. This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

3. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States.

## PARTIES

4. PLAINTIFF GERARDO SANCHEZ is a citizen of the United States of America, who, at all times relevant, was a pretrial detainee in the custody of the Illinois Department of Corrections and confined at Dixon Correctional Center.

5. DEFENDANTS OFFICER B. DETTMAN, #8345, and OFFICER E. ELY, #7991 ("Defendant Officers") were, at the time of this occurrence, duly licensed Dixon Correctional Center Officers. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

6. DEFENDANT WARDEN DONALD ENLOE was, at the time of this occurrence, the Warden of Dixon Correctional Center. He engaged in the conduct complained of in the course and scope of his employment and under color of law. He is sued in his individual capacity.

## ADMINISTRATIVE PREREQUISITES

7. Plaintiff has exhausted his administrative remedies by filing a grievance on September 3, 2015, related to this incident, grievance 15-9-152. The grievance was fully adjudicated and the Administrative Review Board resolved the grievance on October 28, 2015.

## FACTS

8. On September 2, 2015, Plaintiff Gerardo Sanchez was to be transferred from Dixon Correctional Center to court in Chicago, Illinois by Defendant Officers in an IDOC van.

9. Defendant Dettman was the van driver while Defendant Ely was the passenger.

10. It can take anywhere from 2 ¼ to 3 hours to travel from Dixon Correctional Center to Chicago by van.

11. At all times relevant, Mr. Sanchez posed no particularized or heightened threat of escape or danger to himself or any other person.

12. In fact, Mr. Sanchez is now housed at a correctional center that was described by one guard as, "about as minimum security as you can get."

13. Nevertheless, Defendant Officers placed Mr. Sanchez in ankle shackles and handcuffed his hands prior to loading him into the back of the van where he was segregated from them by a steel, wall-like cage.

14. Specifically, Defendant Officers used what is called a "black box" on Mr. Sanchez.

15. A black box is a rectangular device measuring approximately four inches by three inches. When placed over the chain of a pair of handcuffs, it limits a person's ability to move his hands.

16. The handcuffs and black box were bolted to an O-ring on Mr. Sanchez' waist chain. Mr. Sanchez also wore leg chains.

17. Because Mr. Sanchez' feet and hands were chained together, he needed assistance getting into the back of the van.

18. Furthermore, while confined in this device, Mr. Sanchez' hands were restrained in front of his body in a fixed rotation and orientation, making it virtually impossible to extend his hands or—if necessary—protect himself.

19. Located in the back of the van's cage was a bench rest that was equipped with seatbelts.

20. Mr. Sanchez asked to be restrained by a seatbelt, but Defendant Officers refused his request.

21. Further, because Mr. Sanchez was shackled by his hands and feet, he was unable to fasten himself.

22. Defendant Officers knew that by placing Mr. Sanchez in such a device but failing to secure him in a safety belt, Mr. Sanchez would be defenseless against injury should they drive erratically and/or slam on the breaks.

23. Moreover, despite the known and obvious risks of failing to place a passenger, such as Plaintiff, in safety restraints, neither IDOC policy nor Defendant Enloe requires drivers to offer or provide people in custody the use of seatbelts during transports.

24. This is in spite of the fact that IDOC transports usually require persons, such as Plaintiff, to be transported hundreds of miles along interstates and highways where the rate of speed is often in excess of 70 mph.

25. Furthermore, Defendant Dettman has a history of poor and erratic driving.

26. On more than one occasion, Defendant Dettman has been cited for his poor driving. Upon information and belief, Defendants Enloe and Ely knew this.

27. On more than one occasion, Defendant Dettman's poor and erratic driving has caused injury to the persons he was tasked with transporting. Upon information and belief, Defendants Enloe and Ely knew this.

28. For example, Defendant Dettman was previously suspended for four days when his poor and erratic driving caused an injury to a person whom he was tasked with transporting. Upon information and belief, Defendants Enloe and Ely knew this.

29. Despite knowing Defendant Dettman's poor and erratic driving history, including causing previous injuries to persons whom he was tasked with transporting, Defendants Enloe and Ely continued to allow him to transport prisoners without a safety belt.

30. The actions of Defendants constitute a deliberate indifference to the rights and safety of Mr. Sanchez.

31. On the way to court, Defendant Dettman's poor and erratic driving nearly resulted in an accident while they were traveling on the expressway that was only narrowly avoided by his slamming on the brakes.

32. As a result, Mr. Sanchez—who was bound, shackled, and unable to protect himself—went flying into the sharp, metal cage head first.

33. The jarring impact rendered Mr. Sanchez temporarily unconscious.

34. When Mr. Sanchez finally regained consciousness, he felt severe pain in his head, neck, and back, and realized he was bleeding.

35. Defendant Officers asked Mr. Sanchez if he was okay, and Mr. Sanchez told them that he was not okay and that he needed immediate medical attention.

36. Despite Mr. Sanchez' pleas for medical attention, Defendant Officers continued to transport him.

37. Mr. Sanchez continued to complain to the defendant officers about the severe pain he was suffering and repeatedly requested medical attention.

38. Finally, Defendant Officers pulled over to check on him.

39. Initially, Defendant Dettman spit on a tissue and attempted to use that to wipe the blood off of Mr. Sanchez' face.

40. When Mr. Sanchez refused Defendant Dettman's spit wad, Defendant Dettman retrieved a bottle of water and attempted to clean the blood that was streaming down Mr. Sanchez' face and neck.

41. Mr. Sanchez continued to request appropriate medical attention for his objectively serious medical condition, but Defendant Dettman refused, informing Mr. Sanchez that he would

5

not receive any treatment until they returned to Dixon Correctional Center at the end of the day.

42. Defendant Ely was aware Defendant Dettman intended to deprive Mr. Sanchez of the medical attention he required and had the opportunity to prevent Defendant Dettman's failure to provide Mr. Sanchez with needed medical attention, but did not.

43. Although Defendant Ely told Defendant Dettman to call the shift commander and report the incident, Defendant Dettman refused to do so at that time.

44. Rather, Defendant Dettman waited until they had arrived at the courthouse to call his shift commander.

45. To cover up his misconduct, Defendant Dettman made a false and incomplete official report regarding this incident to his shift commander.

46. Despite Mr. Sanchez requesting appropriate medical attention, which Defendant Officers repeatedly denied, Defendant Dettman made the following nonexhaustive false statements:

    a. That Mr. Sanchez stated he was okay,

    b. That Mr. Sanchez only had a couple of scratches, and

    c. That Mr. Sanchez neither needed nor sought medical attention.

47. Mr. Sanchez was then placed in a holding cell at the courthouse where he continued to request medical treatment, which the defendant officers continued to deny.

48. Instead, they gave Mr. Sanchez only three hand wipes to clean off the blood from his face, hands, and neck; two band aids; and a bag of ice.

49. When Mr. Sanchez' public defender saw his objectively serious medical condition, she demanded an explanation from the defendant officers.

50. The defendant officers refused to inform her of how Mr. Sanchez had been injured.

51. Defendant Officers likewise attempted to prevent Plaintiff's public defender from documenting Mr. Sanchez' injuries by taking photos.

52. In all, Mr. Sanchez was denied medical treatment for approximately 9 hours after careening headfirst into a metal cage.

53. This delay in treatment for Mr. Sanchez was objectively unreasonable and constituted a deliberate indifference to his medical needs and constitutional rights.

54. For three months following this incident, Mr. Sanchez had to wear a neck brace continually to prevent further injury.

55. Furthermore, Mr. Sanchez still wears a back brace and goes to physical therapy in an attempt to alleviate the extreme pain and discomfort caused by his continued incapacitation.

56. Moreover, Mr. Sanchez takes pain medication daily to counter the extreme pain and suffering he still suffers from as a result of the defendants' misconduct.

57. As a direct and proximate result of the unlawful actions of the defendants, Mr. Sanchez was injured, including physical injuries, pain and suffering, humiliation, embarrassment, fear, emotional trauma, mental anguish, the deprivation of his constitutional rights and dignity, interference with his normal life, lost time, and attorneys' fees.

### **COUNT I: 42 U.S.C. § 1983 – Deliberate Indifference (Conditions)**
*Against Defendant Officers*

58. Plaintiff re-alleges the above paragraphs as though fully set forth herein.

59. Defendant Officers intentionally placed Plaintiff in a dangerous situation, which posed a substantial risk of serious harm to his health and safety.

60. Defendant Officers were deliberately indifferent to Plaintiff's health and safety.

7

61. As a direct and proximate result of the above-detailed actions of the defendants, Plaintiff was injured, including severe pain, physical injury, mental suffering, anguish and humiliation, emotional distress, fear, and risked life-long impairment.

WHEREFORE the Plaintiff, GERARDO SANCHEZ, purusant to 42 U.S.C. §1983, demands judgment against Defendants Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT II: 42 U.S.C. § 1983 – Denial of Medical Care
*Against Defendant Dettman*

62. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

63. As described more fully above, Defendant Dettman had notice of Plaintiff's objectively serious medical condition.

64. Despite Defendant Dettman's notice, he failed to provide Plaintiff with necessary medical attention, in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

65. As a result of the unjustified and unconstitutional conduct of Defendant Dettman, Plaintiff experienced pain, suffering, emotional distress, injury, and risked life-long impairment.

66. The misconduct of Defendant Dettman was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of Plaintiff.

67. Alternatively, Defendant Dettman was deliberately indifferent to Plaintiff's objectively serious medical needs, and his acts were undertaken intentionally with malice, willfulness, and deliberate indifference to the rights of Plaintiff.

68. As a direct and proximate result of the unconstitutional conduct of Defendant Dettman, Plaintiff was harmed including, but not limited to, severe pain, physical injury, mental suffering, anguish and humiliation, and loss of dignity.

WHEREFORE the Plaintiff, GERARDO SANCHEZ, purusant to 42 U.S.C. §1983, demands judgment against Defendant Dettman for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT III: 42 U.S.C. § 1983 – Failure to Intervene (Denial of Medical Care)
*Against Defendant Ely*

69. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

70. The actions of Defendant Officers constituted unreasonable, unjustifiable, and unlawful denial of medical care to Plaintiff, thus violating her rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983.

71. Defendant Ely failed to intervene when Defendant Dettman unreasonably denied Plaintiff medical care, as alleged above, even though there was no legal basis for it.

72. The aforementioned actions of Defendant Officers was the direct and proximate cause of the Constitutional violations set forth above.

73. As a proximate result of the above-detailed actions, Plaintiff was injured, including the deprivation of her liberty and the taking of her person. In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, including but not limited to attorneys' fees, all to Plaintiff's damage.

WHEREFORE the Plaintiff, GERARDO SANCHEZ, purusant to 42 U.S.C. §1983, demands judgment against Defendant Ely for compensatory damages, punitive damages, the

costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT IV: 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights
*Against Defendant Officers*

74. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

75. As described more fully above, Defendant Officers reached an agreement amongst themselves to punish Plaintiff for a crime she did not commit, and to thereby deprive Plaintiff of her Constitutional rights, all as described more fully throughout this Complaint.

76. In this manner, Defendant Officers, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

77. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

78. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and she suffered damages, severe emotional distress and anguish, and a deprivation of her liberty, as is more fully alleged above.

79. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff and others.

80. As a proximate result of the above-detailed actions of Defendant Officers, Plaintiff was injured, including the deprivation of his civil rights. In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, exposed him to public scandal and disgrace, and caused him to incur various expenses, all to Plaintiff's damage.

WHEREFORE the Plaintiff, GERARDO SANCHEZ, purusant to 42 U.S.C. §1983, demands judgment against Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### COUNT V: 42 U.S.C. § 1983 – Supervisory Liability
*Against Defendant Enloe*

81. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

82. Defendant Officers violated Plaintiff's right by intentionally placing him in a dangerous situation and manifesting deliberate indifference to his safety.

83. Defendant Enloe knew that Defendant Officers were about to place Plaintiff in a dangerous situation and manifest deliberate indifference to his safety.

84. Alternatively, Defendant Enloe knew that Defendant Officers had a practice of placing Plaintiff in a dangerous situation and manifesting deliberate indifference to his safety in similar situation.

85. Defendant Enloe approved, assisted, and condoned Defendant Officer's conduct.

86. As a direct and proximate result of the unconstitutional conduct of Defendant Dettman, Plaintiff was harmed including, but not limited to, severe pain, physical injury, mental suffering, anguish and humiliation, and loss of dignity.

WHEREFORE the Plaintiff, GERARDO SANCHEZ, purusant to 42 U.S.C. §1983, demands judgment against Defendant Enloe for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

                Respectfully Submitted,

                GERARDO SANCHEZ


        By:    s/ Jeanette Samuels
                  One of Plaintiff's Attorneys

                SAMUELS & ASSOCIATES, LTD.
                3440 S. Cottage Grove, #504
                Chicago, IL 60616
                T: 872-588-8726
                E: sam@jsamlaw.com